**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

PEOPLE FOR THE ETHICAL
TREATMENT OF ANIMALS,

    *Plaintiff*,

    v.

UNITED STATES DEPARTMENT OF
HEALTH AND HUMAN SERVICES,

    *Defendant*.

Civil Action No. 1:15-cv-309-CKK

**MEMORANDUM OPINION**
(January 5, 2017)

This cases arises from a Freedom of Information Act ("FOIA") request submitted by Plaintiff People for the Ethical Treatment of Animals ("PETA") to Defendant United States Department of Health and Human Services ("HHS"), Centers for Disease Control and Prevention ("CDC"), seeking records submitted by importers of nonhuman primates ("NHP") to CDC pursuant to certain agency regulations.

On August 18, 2016, the Court issued an order granting-in-part and denying-in-part the parties' respective motions for summary judgment. *People for the Ethical Treatment of Animals v. United States Dep't of Health & Human Servs.*, No. 1:15-CV-309-CKK, 2016 WL 4401979 (D.D.C. Aug. 18, 2016) ("*PETA*"). The Court found that four categories of commercial information submitted by importers of NHPs were confidential and protected under FOIA Exemption 4. *Id.* at *1. However, the Court held that all of the information submitted by three NHP importers—Central State Primate ("CSP"), Dallas Zoo Management ("DZM"), and SBNL USA ("SNBL")—was not

protected because those importers had chosen not to object to the disclosure of their records.  *Id.*

Presently before the Court are Defendant's and Plaintiff's [49] and [52] cross-motions for relief under Federal Rule of Civil Procedure 60(b).  Upon consideration of the parties' submissions,[1] the relevant legal authorities, and the record as a whole, the Court shall GRANT Defendant's motion and GRANT-IN-PART and DENY-IN-PART Plaintiff's motion.   The Court grants Defendant's motion under Rule 60(b)(6) and now holds that the four categories of information the Court previously held qualified for protection pursuant to FOIA Exemption 4 with respect to the records of the seven objecting importers also qualify for such protection with respect to CSP, DZM and SNBL's records.  In addition, the Court grants Plaintiff's motion under Rule 60(b)(1) in that it now holds that two categories of information—animal quantity information and crate information—are not exempt with respect to the records of two importers: Worldwide Primates, Inc. ("WWP") and Primate Products Inc. ("PPI").  The Court denies

---

[1] The Court's consideration has focused on the following documents: Defendant's Corrected Motion for Relief under Fed. R. Civ. P. 60(b), ECF No. [49] ("Def.'s Mot."); Plaintiff's Opposition to Defendant's Motion and Cross-Motion for Relief under Fed. R. Civ. P. 60(b), ECF No. [51] ("Pl.'s Opp'n and Cross-Mot."); Defendant's Reply in Support of its Motion for Relief under Fed. R. Civ. P. 60(b), ECF No. [53] ("Def.'s Reply"); Plaintiff's Surreply in Opposition to Defendant's Motion for Relief under Fed. R. Civ. P. 60(b), ECF No. [55-1] ("Pl.'s Surreply"); Defendant's Opposition to Plaintiff's Cross-Motion for Relief under Fed. R. Civ. P. 60(b), ECF No. [56] ("Def.'s Opp'n"); Plaintiff's Reply in Support of its Cross-Motion for Relief under Fed. R. Civ. P. 60(b), ECF No. [57] ("Pl.'s Reply").  In addition, the Court has reviewed the records produced by Defendant to Plaintiff in response to its FOIA request.  *See* Documents Produced to Plaintiff on 6/4/2015 and 7/8/2015, ECF Nos. [33-1]–[33-5].

Plaintiff's motion under Rule 60(b)(1) with respect to all other importers' records, and denies Plaintiff's motion under Rule 60(b)(3) in its entirety.

## I. BACKGROUND

### A. Procedural History

The background of this case was discussed in detail in the Court's August 18, 2016 Memorandum Opinion and will not be repeated here, but is incorporated by reference as part of this Opinion. As relevant to the pending motions, the Court made the following findings in its August 18 Opinion:

- Four categories of information requested by PETA—the *quantity of animals imported*, the *descriptions of crates used in shipments*, the *names of the companies that export the animals*, and *the names of the airline carriers that transport the animals*—qualify for protection pursuant to FOIA Exemption 4.

- One category of information requested by PETA—the *names of the species of animals imported*—does not qualify for protection pursuant to FOIA Exemption 4.

- Three NHP importers—Central State Primate, Dallas Zoo Management, and SBNL USA—have chosen not to object to the disclosure of the records that they have submitted. Accordingly, Plaintiff is entitled to each of the five categories of information that it has requested in the records submitted by these three non-objecting companies.

*PETA*, 2016 WL 4401979, at *1. Defendant claims that "[s]hortly after the Court issued its Memorandum Opinion, CSP, DZM, and SNBL contacted the CDC and stated that they had been unaware of this case prior to receiving the Court's opinion." Def.'s Mot. at 2. Defendant states that each of these importers "explained that, for reasons uncertain, the Notice did not reach the responsible FOIA manager or comparable official; consequently, those companies' silence was inadvertent and did not reflect a lack of commercial harm from a potential release." *Id.* Defendant has submitted declarations from each of these

entities in which they claim "that the release of [their] records would cause substantial commercial harm for the very reasons the Court embraced with respect to the seven companies that responded to the Notice." *Id.*

On September 15, 2016, based on these new importer-objections, Defendant moved under Federal Rule of Civil Procedure 59 to alter or amend the Court's August 18, 2016 Order. Def.'s Mot. to Alter or Amend the Judgment, ECF No. 41. Defendant requested that the Court amend its Order such that Defendant be allowed to withhold the categories of information the Court had found qualified for protection pursuant to FOIA Exemption 4 for the three previously non-objecting NHP importers. *Id.* at 2.

However, Defendant did not confer with Plaintiff before filing its Motion to Alter or Amend, and Plaintiff moved to strike that Motion for failure to comply with Local Civil Rule 7(m). Pl.'s Mot. to Strike, ECF No. 45. In arguing that Defendant's Rule 59(e) motion should be stricken, Plaintiff stated that "[a]lthough courts may occasionally hear motions despite non-compliance with Local Civil Rule 7(m), out of concern that a litigant will lose its last or only opportunity to argue an issue on the merits, no such concern is present here. HHS can seek similar relief in the future pursuant to Federal Rule of Civil Procedure 60(b) if the parties are not able to resolve the issues raised in HHS's motion during their Rule 7(m) conference." *Id.* at 5. The Court granted Plaintiff's motion and struck Defendant's motion to amend under Rule 59 because the Court found that Defendant's motion was nondispositive for the purposes of Local Rule 7(m) despite the fact that it was related to Defendant's motion for summary judgment. Accepting Plaintiff's argument, the Court noted that "striking Defendant's Motion to

Amend does not leave Defendant without any way of obtaining the relief sought in that motion" because, by the time of the Court's order, Defendant had already sought similar relief through a motion under Federal Rule 60(b).  ECF No. 50 at 2.

That Rule 60(b) motion is now pending before the Court.  Defendant's Rule 60(b) motion is brought under subsections (b)(2) and (b)(6) and seeks the same relief as Defendant's earlier Rule 59 motion—namely, that the Court extend its holding that certain categories of information were properly withheld under Exemption 4 to the three previously non-objecting importers.  Def.'s Mot. at 3.  Plaintiff consents to Defendant's Motion as it relates to the records of DZM.  *Id.*

Plaintiff opposes Defendant's motion as it relates to CSP and SNBL, however, and has also filed its own cross-motion under Rule 60(b).  Plaintiff argues that under Rule 60(b)(1) the Court should reconsider its ruling with regard to two categories of information—the quantity of animals imported and the descriptions of crates used in shipment—because Defendant failed to present sufficient evidence that the release of either would cause NHP importers competitive injury.  Pl.'s Opp'n and Cross-Mot. at 13-15.  Plaintiff also argues that, under Rule 60(b)(3), the Court should reconsider its ruling with regard to all four categories of information due to alleged misrepresentations made by NHP importers in declarations they have filed with the Court.  *Id.* at 15-20.

Both parties' motions are now fully briefed and ripe for resolution.

## B.  The Record

Before addressing the merits of those motions, however, it is helpful to briefly pause and lay out the various different records and declarations relied on by the parties

and reviewed by the Court throughout the stages of the briefing in this case.  First, at the summary judgment stage, Defendant filed, among other things, the 1,575 redacted records from the ten NHP importers at issue in this case that had been produced by Defendant to Plaintiff in response to Plaintiff's FOIA request.  ECF No. 33.  The Court reviewed all of these records before ruling on the parties' cross-motions for summary judgment.  Defendant also filed declarations from two of the seven objecting NHP importers—WWP and PPI—attesting to the competitive nature of the NHP industry and the confidentiality of the redacted information.  ECF Nos. 27-2, 27-3 ("Summary Judgment Declarations").

At the Rule 60(b) motion stage, Defendant has now filed with the Court, among other things, declarations from the three previously non-objecting importers, as well as new declarations from three of the seven originally objecting importers.  ECF Nos. 48-1, 48-2, 53-1, 53-2, 56-1 ("Rule 60(b) Declarations").  In addition to explaining why the previously non-objecting importers had not objected, these declarations also attest to the confidential nature of the information redacted from the importers' records.  *Id.*  On the Court's order, Defendant also filed, *ex parte* for the Court's *in camera* review, the letters that the seven objecting NHP importers had written to Defendant requesting that certain information be redacted from their records.  ECF No. 58.  The Court previously held that Defendant did not need to produce these letters because Defendant claimed that the letters themselves were subject to FOIA exemptions, and the Court felt it unnecessary to review them.  ECF No. 36 at 15 n.10.  There were no objection letters from the three originally non-objecting importers, who apparently only objected to Defendant

informally after being informed of the Court's August 18 Opinion.  The Court's *in camera* review of those letters was focused on the letters of WWP and PPI, due to the parties' dispute regarding what categories of information those importers had requested be redacted from their records.  The parties have not disputed Defendant's representation that the redactions to the other five objecting importers' records that were produced to Plaintiff align with the redactions requested by those importers.  Moreover, the Court has only relied on the letters of WWP and PPI in that they informed the Court that these importers had indicated what information they wished to be redacted from their records that were being considered for release by highlighting that information on a copy of those records that they provided to Defendant.[2]  The Court then ordered Defendant to file, again *ex parte* for the Court's *in camera* review, those sets of highlighted documents, which contained 105 pages.  ECF No. 60.  The Court has reviewed these documents as discussed further below.  The Court will allow these documents to remain as lodged *ex parte* and under seal because they reveal the very information the Court herein orders is exempt from release under Exemption 4.

Finally, in support of Plaintiff's cross-motion under Rule 60(b), Plaintiff attached a number of new records that are also discussed below.  These included, among other things, Certificates of Veterinary Inspections and similar records, as well as Fish and Wildlife Service Law Enforcement Management Information Systems records.  ECF No.

---

[2] Although the Court is not relying on these letters for its decision other than as having provided notice to the Court that the NHP importers had requested redactions by submitting documents with information they sought to have redacted highlighted, the Court will make them available under seal for appellate review, if necessary.

51-1.  Upon being ordered by the Court to do so, Plaintiff filed a sworn declaration explaining when and how Plaintiff had acquired these records, for the purposes of the Court determining the appropriateness of their having been produced only now, in support of Plaintiff's Rule 60(b) motion.  ECF No. 59.

With this background in place, the Court moves on to addressing the merits of the parties' cross-motions.

## II.  LEGAL STANDARD

Pursuant to Rule 60(b) of the Federal Rules of Civil Procedure, a district court is permitted to "relieve a party or its legal representative from a final judgment, order, or proceeding" on one of six enumerated grounds.  Fed. R. Civ. P. 60(b).  Rule 60(b)(1) permits a court to relieve a party from an order based upon "mistake, inadvertence, surprise, or excusable neglect."  Fed. R. Civ. P. 60(b)(1).  Rule 60(b)(2) permits a court to relieve a party from an order based upon "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)."  Fed. R. Civ. P. 60(b)(2).  Rule 60(b)(3) provides that the Court may relieve a party from an order where there is "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party."  Fed. R. Civ. P. 60(b)(3).  Finally, Rule 60(b)(6) represents a catch-all provision, permitting a court to relieve a party from an order for "any other reason that justifies relief" besides those enumerated in subsections (b)(1)-(5).  Fed. R. Civ. P. 60(b)(6).  The party seeking relief under Rule 60(b) bears the burden of showing that he or she is entitled to the relief, *Norris v. Salazar,* 277 F.R.D. 22, 25 (D.D.C. 2011), and "'the decision to grant or deny a

rule 60(b) motion is committed to the discretion of the District Court,'" *Kareem v. FDIC,*

811 F. Supp. 2d 279, 282 (D.D.C. 2011) (quoting *United Mine Workers of Am. 1974*

*Pension v. Pittston Co.,* 984 F.2d 469, 476 (D.C. Cir. 1993)).

### III.  DISCUSSION

**A.  Defendant's Motion for Relief Under Rule 60(b)**

Defendant moves for relief under Rule 60(b)(2) and (b)(6).  Under either

subsection, Defendant asks this Court to extend its holding that the four categories of

information that the Court previously found were properly withheld under Exemption 4

as to the seven objecting importers are also properly withheld as to the three previously

non-objecting importers: DZM, CSP and SNBL.  Def.'s Mot. at 3.

As an initial matter, Plaintiff consents to Defendant's motion as it relates to the

records of DZM.  Accordingly, Defendant's motion is GRANTED with regard to DZM.

With regard to the records of CSP and SNBL, the Court finds that the relief Defendant

seeks under Rule 60(b)(2) is precluded, but that relief under Rule 60(b)(6) is appropriate

under the particular substantive and procedural circumstances of this case.  Accordingly,

exercising its discretion, the Court will GRANT Defendant's motion with regard to CSP

and SNBL as well.

**1.  Rule 60(b)(2)**

Rule 60(b)(2) provides that a Court may relieve a party from a final judgment or

order based on "newly discovered evidence that, with reasonable diligence, could not

have been discovered in time to move for a new trial under Rule 59(b)."  Fed. R. Civ. P.

60(b)(2).  This subsection clearly does not apply to the particular circumstances here.  In

this case, it is undisputed that the "newly discovered evidence" at issue was discovered in time to move for a new trial under Rule 59. *See* Fed. R. Civ. P. 59(b) ("A motion for a new trial must be filed no later than 28 days after the entry of judgment."); Def.'s Mot. at 7 ("In the week after the Court issued its opinion, the three non-responding companies contacted the CDC" to provide the new evidence). Indeed, Defendant timely moved under Rule 59, based on the precise evidence at issue here. Def.'s Mot. to Alter or Amend the Judgment, ECF No. 41 (attaching the same declarations Defendant has submitted with its Rule 60(b) motion). The plain text of Rule 60(b)(2) indicates that the rule cannot apply under these circumstances.

Accordingly, Defendant's motion under Rule 60(b)(2) is DENIED.

### 2. Rule 60(b)(6)

The Court will, however, grant Defendant's motion under Rule 60(b)(6). In addition to the specific reasons enumerated in subsections (b)(1)-(5), a court may grant a party relief from an order under Rule 60(b)(6) for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). In other words, Rule 60(b)(6) is a "catch-all provision." *Lightfoot v. D.C.*, 555 F. Supp. 2d 61, 70 (D.D.C. 2008). However, "[t]he Supreme Court has consistently held that Rule 60(b)(6) motions should only be granted in 'extraordinary circumstances.'" *Jarvis v. Parker*, 13 F. Supp. 3d 74, 80 (D.D.C. 2014) (quoting *Ackermann v. United States,* 340 U.S. 193, 199 (1950)). The D.C. Circuit has added that Rule 60(b)(6) "should only be sparingly used." *Good Luck Nursing Home v. Harris,* 636 F.2d 572, 577 (D.C. Cir. 1980).

10

This case presents an "extraordinary circumstance" that justifies relief under Rule 60(b)(6). "[A] party that has stipulated to certain facts or has not presented known facts helpful to its cause when it had the chance cannot ordinarily avail itself on rule 60(b) after an adverse judgment has been handed down." *Good Luck Nursing*, 636 F.2d at 577. "This does not mean, however, that the district court is powerless to correct errors into which it is led by the parties' failure to make the key facts known." *Id.* "When a party timely presents a previously undisclosed fact so central to the litigation that it shows the initial judgment to have been manifestly unjust, reconsideration under rule 60(b)(6) is proper even though the original failure to present that information was inexcusable." *Id.* The case for reconsideration is especially strong where the effect of the error, if not corrected, would be to harm the interests of third parties, as opposed to the erring litigant.

Here, the Court has become aware of precisely such a "previously undisclosed fact," *id.*, and to ignore it would render its original opinion inherently unfair to the third parties whose business information is at risk. The Court found that seven of the ten importers at issue would face "substantial competitive injury" if four categories of their confidential business information were disclosed. *PETA*, 2016 WL 4401979, at *6. However, the Court did not apply this finding equally to all ten importers at issue. The Court noted that "three of the ten NHP importers submitting the requested information *have elected not to object to the disclosure of that information*." *Id.* at *11 (emphasis in original). Based only on this lack of objection, the Court held that "the three companies that chose not to object to the disclosure of their information . . . have not proffered that disclosure would harm their companies." *Id.* at *12. The Court found that there was a

"reasonable inference that these three companies have not objected to the disclosure of their records because they do not believe that they will face substantial harm by the disclosure of such records."  *Id.*

As it turns out, this inference was not correct.  Defendant has now provided declarations from representatives of these three importers which state that the companies at issue did not fail to object because they did not believe disclosure would cause them harm.  Instead, the Rule 60(b) Declarations indicate that they failed to object because they *were not aware* that their information had been requested and was subject to disclosure.

Lisa Leonarduzzi, a representative of CSP, states that CSP "was only recently made aware of the FOIA request at issue."  Decl. of Lisa Leonarduzzi, ECF No. 48-1 ("Leonarduzzi Decl."), at ¶ 5.  She further states that CSP's "failure to respond was not a willful act but at most an oversight due to not being aware of the predisclosure notice," and that "[t]his single instance of oversight was a deviation from how [CSP] has responded in the past and how we have treated such predisclosures diligently."  *Id.* ¶¶ 7, 14.  She states that "neither I nor [CSP] 'elected' nor 'chose' not to respond or object as we have always responded to predisclosure notices in the past and if we were in fact aware of the predisclosure notice in this case, we most certainly would have not only responded, but we would have objected to the disclosure."  *Id.* ¶ 13.

Steve Glaza, an Executive Vice President of SNBL, states that SNBL too was "unaware that confidential, proprietary, and otherwise sensitive information related to SNBL's business operations were susceptible to public disclosure."  Decl. of SNBL

USA, LTD., ECF No. 48-2 ("SNBL Decl."), at ¶ 7.  Mr. Glaza further states that SNBL's

failure to respond was due to a "clerical error, oversight or some similar mistake."  *Id.*

Mr. Glaza states that "[h]ad SNBL received and responded to the original Notice within

the time allotted by the Notice, SNBL would have objected to the disclosure of the

information related to SNBL's business operations."  *Id.* ¶ 10.

These facts, which only became known to Defendant, and then the Court, after the

Court's August 18, 2016 decision, establish that a basic premise upon which that decision

rested was mistaken.  Other than the inference the Court drew from their lack of

objection, there was no material difference between CSP and SNBL and the other

importers.  The reasoning underlying the Court's decision that disclosure of the four

categories of information at issue would cause substantial harm to the others applied

equally to CSP and SNBL.  Indeed, the Rule 60(b) Declarations now submitted by CSP

and SNBL both confirm that they would suffer the same types of harm if their

information was released.  *See* Leonarduzzi Decl. at ¶¶ 6, 8, 10-11; SNBL Decl. at ¶¶ 12-

19.  If anything, the harm to these importers would be greater, considering they would

now be at a competitive disadvantage in relation to the importers whose information the

Court ordered was properly withheld.  SNBL Decl. at ¶ 19.  There is no longer any just

reason to treat the records of the previously non-objecting importers differently than the

other importers at issue.  In fact, to do so would be inherently unfair.

Relief under Rule 60(b)(6) is also appropriate in this particular case because of

the procedural history that led to this motion.  As described above, these new facts were

brought to the Court's attention in a timely motion under Rule 59, which was stricken for

procedural reasons—involving an incorrect but not entirely unreasonable interpretation of

Local Rule 7(m)—for which CSP and SNBL share no part of the blame.  After Plaintiff

moved to strike Defendant's Rule 59 motion, Defendant immediately filed the pending

motion under Rule 60.  *See Salazar ex rel. Salazar v. D.C.*, 633 F.3d 1110, 1118-19 (D.C.

Cir. 2011) ("A litigant's diligence in pursuing review of a decision, either through appeal

or through Rule 60(b)(6) relief, is relevant in assessing whether extraordinary

circumstances are present.").  Although Plaintiff argued in moving to strike Defendant's

timely Rule 59 motion that Defendant would be able to move under Rule 60, Plaintiff

now argues—and the Court has accepted—that reconsideration under Rule 60(b)(2) is

inapplicable *because* of the fact that Defendant discovered and raised this issue in a

timely fashion under Rule 59.  Pl.'s Opp'n and Cross-Mot. at 2-3.  The Court accepts

Plaintiff's argument that it is not attempting to play a "shell game," and has acted in good

faith in making these arguments.  Pl.'s Surreply at 1.[3]  Regardless, Rule 60(b)(6) is now

the final remaining option for this Court to modify a now inaccurate aspect of its Order

about which Defendant notified the Court in a timely manner.

Plaintiff has raised a number of other arguments in opposition to Defendant's

Rule 60(b) motion, but none of them change the Court's ultimate conclusion that relief is

warranted.  First, the record does not indicate any serious fault on the part of Defendant

or the importers for SNBL and CSP's failure to object earlier.  *See Lightfoot*, 555 F.

---

[3] On October 26, 2016, Plaintiff moved for leave to file a surreply to respond to
what it considered to be new arguments Defendant had raised in its reply in support of
Defendant's Rule 60(b) motion.  Defendant consented to Plaintiff's motion in part.  The
Court GRANTS Plaintiff's motion and has considered Plaintiff's surreply in resolving the
parties' cross-motions under Rule 60(b).

Supp. 2d at 71 ("Legal authority has made the fault/no fault distinction the controlling factor in determining whether extraordinary circumstances exist."). This is not a case of a "strategic choice[ ] that later turn[ed] out to be improvident." *Kramer v. Gates,* 481 F.3d 788, 792 (D.C. Cir. 2007). Defendant complied with the procedures for notifying the importers of Plaintiff's FOIA requests that is laid out in 45 C.F.R. § 5.65(d)(1) by sending pre-disclosure notices to CSP and SNBL. *PETA*, 2016 WL 4401979, at *2. Defendant accordingly acted reasonably and was required to do nothing more. Plaintiff argues that Defendant did not exercise reasonable diligence because it did not actively seek declarations from CSP and SNBL regarding their objections to, and the competitive harm that would result from, the disclosure of their records before filing its motion for summary judgment. Pl.'s Opp'n and Cross-Mot. at 5. But Defendant presumably assumed, as did this Court, that CSP and SNBL's silence meant that they had received the pre-disclosure notices and simply did not object to the release of their records. Defendant accordingly had no reason to contact CSP and SNBL for evidence of commercial harm in the process of preparing its motion for summary judgment. The Court does not find Defendant's behavior in this sense unreasonable. With regard to CSP and SNBL's fault, representatives from each have declared under oath, and the Court has no reason to doubt, that their failure to respond was purely a clerical error or oversight. Leonarduzzi Decl. at ¶¶ 7, 14; SNBL Decl. at ¶ 7.

Further, the rule that motions under Rule 60(b)(6) must not be "premised on one of the grounds for relief enumerated in clauses (b)(1) through (b)(5)," *Liljeberg v. Health Servs. Acquisition Corp.,* 486 U.S. 847, 863 (1988), does not bar relief here. Defendant's

motion *cannot* be premised on Rule 60(b)(2) under the plain text of that rule because, as discussed above, the evidence at issue was "discovered in time to move for a new trial under Rule 59(b)," Fed. R. Civ. P. 60(b)(6).  Nor is this a case where Defendant seeks relief under Rule 60(b)(6) to avoid the time limit for bringing a motion under another subsection of Rule 60(b), the concern underlying the mutual exclusivity of the Rule 60(b) subsections.  *See Pioneer Inv. Servs. Co. v. Brunswick Associates Ltd. P'ship*, 507 U.S. 380, 393 (1993) ("These provisions are mutually exclusive, and thus a party who failed to take timely action [under another subsection] may not seek relief more than a year after the judgment by resorting to subsection (6).").  Plaintiff does not dispute the timeliness of Defendant's motion under either subsection (b)(2) or (b)(6).  Instead, this is a peculiar circumstance that does not fall under any of the grounds for relief enumerated in subsections (b)(1) through (b)(5) and is accordingly appropriately dealt with under subsection (b)(6).

Finally, the Court's holding is not altered by Plaintiff's attempts to discredit the Rule 60(b) Declarations of Mr. Glaza and Ms. Leonarduzzi.  With respect to Mr. Glaza, Plaintiff argues that his testimony that the market is "extremely competitive" is "demonstrably false."  Pl.'s Opp'n and Cross-Mot. at 7.  Plaintiff argues that SNBL frequently cooperated with, and accordingly "necessarily shared" information with, purported competitors to import primates.  *Id.* at 8.  With respect to Ms. Leonarduzzi, Plaintiff similarly argues that her testimony that "CSP would experience substantial competitive harm if the documents at issue are released is simply untrue," because certain documents Plaintiff has obtained indicate that CSP was cooperating and "necessarily

16

shar[ing]" information with other companies regarding the importation of primates, and

therefore "CSP cannot experience any competitive injury if the information is disclosed

in this case."[4]  *Id.* at 9.

These arguments are unpersuasive in opposition to Defendant's motion for

reconsideration because *none* of them relate to the reason that the Court is granting

Defendant's motion—that CSP and SNBL were not aware of the FOIA requests at issue

and therefore their failure to object did not indicate that they did not believe disclosure

would cause them competitive harm.  Plaintiff does not meaningfully cast any doubt on

that premise.  Instead, these arguments apparently seek to re-litigate the merits of the

Court's underlying decisions with regard to the applicability of Exemption 4, and are

---

[4] Plaintiff also argues that no such competitive harm could occur because the United States Department of Agriculture's website indicates that CSP's "class B license," which Plaintiff argues is required for the purchase or sale of primates, was cancelled on March 3, 2016.  Pl.'s Opp'n and Cross-Mot. at 9-10.  This is not a persuasive reason to deny Defendant's motion.  First, it is simply not responsive to Defendant's argument that CSP was not aware of Plaintiff's FOIA request until after the Court's order.  Second, to the extent that Plaintiff argues it represents an unrelated reason to revisit the Court's order with respect to CSP, it fails because it is based on evidence that was not presented to the Court at the summary judgment stage, and yet Plaintiff has not explained, under the rubric of Rule 59 or Rule 60(b), why it could not have been brought to the Court's attention earlier or why the Court should consider it now.  It is accordingly not properly before the Court.  Finally, even if the Court were to consider this evidence, it does not indicate that CSP has left the NHP importing industry to such an extent that the records it has submitted to Defendant are inherently no longer confidential.  CSP explains that although it does not currently engage in the "purchase" or "resale" of NHPs, it is still very much involved in, and competing in, the NHP importing industry.  Among other things, CSP explains that it "holds an active import license issued by U.S. Fish and Wildlife Service" and is "registered and licensed as an Intermediate Handler."  Decl. of Central State Primates, ECF No. 56-1, at ¶¶ 8-9.  Although CSP elected not to maintain a Class B license at this time, it explains that "is not required to maintain such a license in order to conduct its business regarding the importation of nonhuman primates."  *Id.* at ¶ 10.

mirrored in Plaintiff's Cross-Motion for Reconsideration under Rule 60(b)(3).  Because these arguments are accordingly more appropriately considered in the context of that motion, the Court addresses them below, *infra* § III.B.2.  They do not preclude relief for Defendant under Rule 60(b)(6).

For these reasons, Defendant's Motion for Relief under Rule 60(b) is GRANTED. Under the specific facts of this case, the Court finds that exceptional circumstances exist and relief under Rule 60(b)(6) is appropriate.  Accordingly, the Court now holds that the four categories of information the Court previously held qualified for protection pursuant to FOIA Exemption 4 with respect to the records of the seven objecting importers— quantity of animals imported, the descriptions of crates used in shipments, the names of the companies that export the animals, and the names of the airline carriers that transport the animals—also qualify for such protection with respect to the records of DZM, CSP, and SNBL.

## B.  Plaintiff's Motion for Relief Under Rule 60(b)

Plaintiff also moves for relief under Rule 60(b).  First, Plaintiff moves under Rule 60(b)(1) for reconsideration of the Court's decision that two categories of information— the quantity of animals imported and the descriptions of crates used in shipment—were properly withheld under Exemption 4 due to a lack of sufficient evidence to support that conclusion.  Second, Plaintiff moves under Rule 60(b)(3) for reconsideration of the Court's decision in its entirety due to alleged misrepresentations in declarations submitted by importers.

18

### 1. **Rule 60(b)(1)**

The Court will grant-in-part and deny-in-part Plaintiff's motion under Rule

60(b)(1).  The crux of Plaintiff's motion under this subsection is that Defendant has not

carried its burden of showing that animal quantity and crate information is confidential.

Plaintiff argues that the Summary Judgment Declarations submitted on behalf of PPI and

WWP, upon which Defendant relied as evidence of such confidentiality at the summary

judgment stage, should be disregarded because neither importer themselves requested

that Defendant withhold these categories of information from their own company's

records.  The Court agrees that neither importer in fact requested such information be

withheld, and that this diminishes the probative value of their declarations.  Accordingly,

the Court will revise its August 18, 2016 Memorandum Opinion and Order by now

ordering that animal quantity and crate information on PPI and WWP's records is not

exempt from disclosure under Exemption 4 and may not be withheld.  However, having

reviewed all of the evidence currently in the record, the Court finds that, regardless of

PPI and WWP's failure in this regard, there is still sufficient evidence to support the

application of Exemption 4 to these categories of information for the remaining

importers.

At the summary judgment stage, as support for its position that the release of

animal quantity and crate information would cause substantial harm to the competitive

positions of the NHP importers, Defendant submitted declarations from two of the seven

objecting importers: PPI and WWP.  *PETA*, 2016 WL 4401979, at *7.  In a footnote in its

August 18 Opinion, the Court noted that, of these two, the Court would "focus its

attention primarily on the [WWP] declaration," because the PPI declaration had "minimal value regarding the commercial importance of," *inter alia*, animal quantity and crate information. *Id.* at *7 n.11. The Court reasoned that PPI had apparently not itself requested that these categories of information be kept confidential. *Id.* This conclusion was based on the fact that Defendant's FOIA officer had stated in her declaration that Defendant "applied the level of protection requested by the importer" if "the concerns expressed by an importer were facially reasonable and consistent with the provisions of the FOIA," and that these categories of information had not been redacted from the records of PPI that were released to Plaintiff. *Id.* (quoting Supp. Norris Decl., ECF No. [28-5], ¶ 9). Nonetheless, relying primarily on WWP's declaration, the Court still held that Defendant had carried its burden of showing that the release of these two types of information would cause competitive harm to NHP importers. *Id.* at *10.

Plaintiff now moves for relief from this ruling under Rule 60(b)(1) because it argues that WWP's Summary Judgment Declaration suffers from the same flaws as PPI's. Pl.'s Opp'n and Cross-Mot. at 13. Rule 60(b)(1) allows a court to relieve a party from a judgment on the grounds of "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). Plaintiff argues that, like the PPI Summary Judgment Declaration, the WWP Summary Judgment Declaration is of little value as to the commercial importance of these two categories of information because WWP also did not request that they be redacted from its records before they were released to Plaintiff. Pl.'s Opp'n and Cross-Mot. at 13. Accordingly, Plaintiff argues that the Court should find that Defendant failed to produce any sufficient evidence to carry its burden of proving the

application of Exemption 4.  *Id.*  Plaintiff argues that some mixture of its own excusable

neglect and the Court's mistake in considering the arguments raised by Plaintiff resulted

in the Court overlooking this matter.[5]

The Court has now reconsidered the evidentiary support for the application of

Exemption 4 to animal quantity and crate information.  As an initial matter, as discussed

above, because much of the parties' arguments regarding Plaintiff's Rule 60(b)(1) motion

consisted of speculation as to whether the particular importers chosen as declarants at the

summary judgment stage in fact requested that Defendant redact these categories of

information from their records, the Court ordered Defendant to file the letters importers

had sent to Defendant objecting to the disclosure of their records for the Court's *in*

*camera* review.  Having now reviewed the letters, and the proposed redactions WWP and

PPI submitted to Defendant along with their letters, the Court concludes that neither

WWP nor PPI requested animal quantity or crate information be withheld.  The Court

agrees with Plaintiff that this reduces the probative value of both Summary Judgment

Declarations.  Despite PPI and WWP's statements regarding the importance of such

information, both demonstrated that they are not, in fact, sufficiently concerned about the

release of this information on their own records for the Court to hold that such

---

[5] As Plaintiff concedes, Plaintiff "did not . . . point out that WWP had . . . never requested that animal quantity information be redacted" during the summary judgment briefing.  Pl.'s Opp'n and Cross-Mot. at 13.  Plaintiff claims its failure to make this argument was an "inadvertent mistake."  *Id.*  Plaintiff did, however, raise this argument with regard to PPI, and did argue that both PPI and WWP had failed to request crate information be redacted.  Accordingly, in light of the fact that the Court strives to resolve matters on their merits and that Plaintiff raised this general argument to some degree previously, the Court finds it appropriate to reconsider its ruling under Rule 60(b)(1).

information is confidential.  As a result, the Court will grant Plaintiff's motion in part, in that it now finds that quantity and crate information on PPI and WWP's records is not confidential information protected under Exemption 4.

The Court denies Plaintiff's motion, however, to the extent that it argues that the failure of these two importers to request such information be redacted from *their* records means that there is not sufficient evidence in the record to show that this information is confidential for *other* NHP importers.  In response to Plaintiff's Rule 60(b) motion, the Court has reconsidered the evidence on this matter, and concludes that it is sufficient to satisfy Defendant's burden.  As an initial matter, the Summary Judgment Declarations of PPI and WWP provide support for the proposition that the NHP industry is competitive and that in that industry business information of the kind at issue here is generally deemed confidential.  Accordingly, to the extent the Court earlier gave the impression that it found PPI's declarations to be of no evidentiary value *at all* due its own failure to request redactions, the Court clarifies that finding.  Even if WWP and PPI did not themselves originally ask for animal quantity and crate information to be withheld, the Court finds that their declarations are still probative in that they explain the reasons why the release of such information would cause competitive harm in the NHP industry as a general proposition.  *See* Decl. of Primate Products Inc., ECF No. 28-3, at ¶ 6 ("The primate import business is very competitive with only a handful of companies engaging in the practice.  Specifics such as animal numbers being imported . . . can result in putting PPI at a disadvantage should they become available to our domestic and international competition.  This information could be used by our competition to determine volume of

22

business or pricing paid . . . [o]ne could even determine specifications on animals by disclosing such information as crate numbers or sizes"); *id.* at n.1 ("The crate information can reveal the size and dimension of crates which, in turn, reveals the capacity of the crates and can provide insight into the size or type of NHP imported."); Decl. of Worldwide Primates, Inc., ECF No. 28-2, at ¶ 10 ("The release of quantities and species imported would [ ] allow our competition to determine our volume of business and possibly interfere with our supply of such species.  In addition, the release of the quantity and species could enable a competitor to calculate the percentage of sales based on a particular species and use that information when analyzing market share and other types of commercial business parameters . . .").

Moreover, this general proposition is confirmed in the record by the fact that other importers *did* request this information be withheld—a point which is demonstrated by Ms. Norris' declaration in conjunction with the redacted documents Defendant provided to Plaintiff.  Finally, the record now contains the Rule 60(b) Declarations from additional importers—CSP, SNBL and Valley Biosystems, Inc.—that also state that the release of quantity and crate information would cause competitive harm for the reasons laid out in the Court's original Opinion.  *See* SNBL Decl. at ¶ 18 ("the quantity of animals imported and the description of crates used in shipments are considered by SNBL to be confidential commercial information.  For SNBL, the disclosure of such information would provide its business rivals meaningful insight into SNBL's business operations and workflow and would thus place SNBL at a competitive disadvantage."); Leonarduzzi Decl. at ¶¶ 8, 13 ("the disclosure of the quantity of nonhuman primates imported [and]

the description of the crates used in shipments . . . would cause irreparable harm to [CSP's] business" for "the reasons set forth in the Court's Opinion"); Decl. of Valley Biosystems, Inc., ECF No. 56-1, at ¶ 7 (disclosure of, *inter alia*, "the quantity of NHPs imported [and] the description of crates used in shipments" would allow "potential competitors to . . . reverse-engineer VBS's business model and thereby discover our unique, otherwise unidentifiable advantages"). Despite the issues Plaintiff has correctly raised with respect to WWP and PPI's declarations, there is enough evidence in the record for Defendant to carry its burden as to the application of Exemption 4 with regard to importers other than WWP and PPI.

Lastly, the Court rejects Plaintiff's argument that certain Fish and Wildlife Service ("FWS") records submitted in support of Plaintiff's Cross-Motion show that animal quantity information was already in the "public domain" and accordingly cannot be protected by Exemption 4. Pl.'s Reply at 10. The issue of whether the requested information did not qualify for exemption because it was publicly available was fully argued at the summary judgment stage. *See, e.g.*, Pl.'s Mem. in Opp'n to Def.'s Mot. for Summary Judgment and in Support of Pl.'s Cross-Mot. for Summary Judgment, ECF No. 23-1, at 21-22; Pl.'s Reply Mem. in Support of its Cross-Mot. for Summary Judgment, ECF No. 31, at 4-6. The Court considered the parties' arguments and concluded that Defendant had not carried its burden with respect to one category of information—the names of the species imported—for this very reason. *PETA*, 2016 WL 4401979, at *10. With regard to other categories of information, the Court found "PETA's argument [that

the information was already publicly available] unavailing because none of the publicly

available information cited by PETA involve[d] *shipment-by-shipment data*." *Id.* at *11.

Plaintiff has now filed with the Court voluminous documents that, it claims,

contain such shipment-by-shipment quantity information.  Instead of moving for

consideration of this evidence under Rules 59 or 60(b)(2), Plaintiff simply references it as

part of its Rule 60(b)(1) motion and asserts that "[p]arties regularly move under Rule

60(b)(1) to introduce evidence that they failed to provide in a timely fashion due to

inadvertence, neglect, or mistake."  Pl.'s Reply at 8.

But Plaintiff makes no attempt, under the standards governing any subsection of

Rule 60(b), to justify having only produced this information now.  Because Plaintiff

moves under Rule 60(b)(1), the Court notes in particular that Plaintiff does not explain

how its failure to introduce this evidence earlier was "excusable neglect."  It is apparent

from the record that Plaintiff could not make this showing.  "[T]he determination of

excusable neglect is an equitable matter," and among the relevant factors a court can

consider are "the length of delay" and "the reason for the delay, including whether it was

in control of the movant."  *FG Hemisphere Assocs., LLC v. Democratic Republic of

Congo*, 447 F.3d 835, 838 (D.C. Cir. 2006).  Plaintiff has informed the Court that

Plaintiff's organization obtained substantially the same records and information from

FWS that it seeks to use now pursuant to a FOIA request in February, 2015.  Suppl. Decl.

of John Seber, ECF No. 59, at ¶ 4.  In other words, Plaintiff's organization was aware of

this information almost a year before Plaintiff filed its cross-motion for summary

judgment in this case, and over a year before it filed its reply brief.  Nonetheless,

throughout the briefing of the summary judgment motions in this case, and pending the

Court's resolution of those motions, Plaintiff never produced, or even mentioned, this

information.  Only in opposing Defendant's Rule 60(b) motion on October 14, 2016, did

Plaintiff for the first time mention it.  Plaintiff provides no reason for its delay.[6]  *See*

*Ellipso, Inc. v. Mann*, 583 F. Supp. 2d 1, 3 (D.D.C. 2008) (denying request under Rule

60(b)(1) based on allegedly "new" evidence because party "waited for over two years to

ask the Court to reinstate the claims based on evidence entirely within his control" and

had "not pointed to the reason for his delay").  Because the Court denies Plaintiff's

request to consider this new evidence, the FWS records do not, as Plaintiff claims,

"weigh[ ] in favor of granting [Plaintiff's] motion."  Pl.'s Reply at 11.

In sum, the Court GRANTS-IN-PART and DENIES-IN-PART Plaintiff's motion

under Rule 60(b)(1).  The Court grants Plaintiff's motion in that it finds that WWP and

PPI did not request animal quantity and crate information be redacted from their records

before they were disclosed to Plaintiff.  The Court accordingly will now hold that such

information on WWP and PPI's records is not confidential and therefore not protected

under Exemption 4.  However, the Court finds that, despite these inconsistencies in WWP

and PPI's Summary Judgment Declarations, there is still sufficient evidence in the record,

---

[6] Plaintiff contends, in a brief footnote, that if it is true that the NHP importers were not aware of these FWS records until they were submitted with Plaintiff's Cross-Motion, as the importers claim, than "it was excusable that [Plaintiff] did not learn of them until after the Court entered its Opinion."  Pl.'s Reply at 8 n.7.  This is obviously not correct.  Plaintiff, not the NHP importers, was the party who had received "substantially similar" records from FWS pursuant to its own FOIA request in early 2015.

including the Rule 60(b) Declarations, to support the finding that such information on the records of *other* importers was properly withheld.

### 2.  Rule 60(b)(3)

Finally, Plaintiff argues that the Court should reconsider its order in its entirety under Federal Rule 60(b)(3).  Rule 60(b)(3) allows the Court to grant relief due to "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party."  Fed. R. Civ. P. 60(b)(3).  The party seeking relief under Rule 60(b)(3) must prove such fraud or misrepresentation with "clear and convincing evidence." *Shepherd v. Am. Broad. Companies, Inc.*, 62 F.3d 1469, 1477 (D.C. Cir. 1995). "Additionally, a Rule 60(b)(3) motion will not be granted unless the plaintiff can 'show actual prejudice' which means 'he must demonstrate that defendant's conduct prevented him from presenting his case fully and fairly.'"  *Walsh v. Hagee*, 10 F. Supp. 3d 15, 19-20 (D.D.C. 2013) (quoting *Ramirez v. Dep't of Justice,* 680 F. Supp. 2d 208, 209 (D.D.C. 2010)).  Plaintiff's motion does not met these standards.

Plaintiff alleges that the NHP importers committed "fraud" in this case by stating in Summary Judgment and Rule 60(b) Declarations that the NHP industry is competitive and that the information requested is generally kept confidential.  Pl.'s Opp'n and Cross-Mot. at 16.  Plaintiff claims that these statements are "fundamentally misleading" because "[i]n the course of researching the primate import industry, PETA has learned that the importers who offered declarations" cooperate with each other and transfer primates between themselves.  *Id.*  Plaintiff argues that this cooperation shows, contrary to the

declarations of the importers, that the industry is not competitive, and that the information sought is not confidential.

First, as a factual matter, the Court is not persuaded that the various examples of alleged "cooperation" Plaintiff has pointed to in fact show that NHP importers freely share information, work as some sort of "cooperative network," Pl.'s Mot. at 17, or are otherwise not competitive with each other. Competitors in the NHP importing industry, like competitors in any industry, may interact with each other in a number of different postures throughout the business ecosystem within which they work. Competitors may buy and sell from each other, or work together on a particular joint venture, but that does not undermine the Court's finding that as a general matter they are competitive with, and keep key business-model information confidential from, each other.

This conclusion is supported by several Rule 60(b) Declarations Defendant has filed from the importers at issue that explain why the particular instances of alleged "cooperation" raised by Plaintiff in its Cross-Motion are not indicative of a general lack of competition or of the free sharing of information between the competitors. *See, e.g.*, Declaration of Worldwide Primates, Inc., ECF No. 56-1, Ex. E, ¶ 4 ("[s]ome NHP import companies are also involved in contract research, and at times may have a need to purchase or otherwise acquire NHPs from other importers. Simply because PETA has produced documents showing transactions between different NHP suppliers does not mean those transactions were 'cooperative' as opposed to a sale"); Declaration of Primate Products Incorporated, ECF No. 56-1, Ex. F, ¶ 7 ("PPI has never 'jointly' imported animals with SNBL. In fact, PPI has offered quarantine services to SNBL and others.

The fact that PPI occasionally does business with its competitors does not suggest that no competition exists, or that PPI would freely share its proprietary business records with its competitors."); Declaration of Central State Primates, ECF No. 56-1, Ex. G, ¶ 14 ("[w]hile it is true that CSP occasionally collaborates with another NHP importer regarding a particular business transaction, the companies generally exercise strict confidentiality in relation to each other"); Declaration of SNBL USA, LTD., ECF No. 56-1, Ex. K ¶ 9 ("PETA's assertion that, simply by engaging in commercial transactions that involve other participants in this business ecosystem, SNBL does not compete with those companies is either naïve or misleading").  The Court finds these explanations reasonable and persuasive.

Second, even if these instances of cooperation did tend to indicate a lack of competition and confidentiality for the purposes of Exemption 4, the importer declarations are still not the type of "fraud," "misrepresentation" or "misconduct" envisioned by Rule 60(b)(3).  Beyond speculative assertions as to the importers' bad faith, Plaintiff offers no proof that declarants *lied* by arguing that their industry was sufficiently competitive to warrant protection under Exemption 4.  *See Ivey v. Nat'l Treasury Employees Union*, No. CIV. A. 05-1147 EGS, 2008 WL 4091676, at *1 (D.D.C. Sept. 4, 2008) ("Neither plaintiff's beliefs as to the veracity of defendants' documents or witnesses, nor his musings as to their motives, rise to the level of clear and convincing evidence" of fraud).  At most, Plaintiff has demonstrated that importers stated their position on a central substantive issue in this case, which Plaintiff simply disputes.[7]

---

[7] The Court notes that Plaintiff did not appear to dispute the competitiveness of

29

Plaintiff cannot re-litigate the merits of that issue by claiming importers committed "fraud" by arguing their case. *See Am. Cetacean Soc. v. Smart*, 673 F. Supp. 1102, 1105 (D.D.C. 1987) ("A motion for relief from judgment on the ground of misrepresentation will be denied if it is merely an attempt to relitigate the case").

Finally, Plaintiff's motion fails because Plaintiff has not demonstrated that the alleged "fraud" or "misrepresentations" prejudiced Plaintiff.  In order to prevail under Rule 60(b)(3), a party "must demonstrate that defendant's conduct prevented him from presenting his case fully and fairly." *Ramirez*, 680 F. Supp. 2d at 210.  Courts in this Circuit regularly deny Rule 60(b)(3) motions where a party points to some alleged fraud, but cannot show that that fraud prevented it from presenting its own case. *See, e.g.*, *Oladokun v. Corr. Treatment Facility*, 309 F.R.D. 94, 100 (D.D.C. 2015) (denying Rule 60(b)(3) motion because "[t]here is no indication that Defense counsel's statements, even if false, prevented [plaintiff] from presenting his case fully and fairly."); *Aygen v. D.C.*, 311 F.R.D. at 3 (denying Rule 60(b)(3) motion because plaintiff "fails to demonstrate that the other party's conduct prevented her from fully and fairly presenting her case.").[8]

---

the industry at the summary judgment stage, as the Court held that "it is undisputed that the NHP importers submitting the information in question 'actually face competition.'" *PETA*, 2016 WL 4401979, at *6 (quoting *Nat'l Parks & Conservation Ass'n v. Kleppe*, 547 F.2d 673, 679 (D.C. Cir. 1976)).  This is an additional reason for denying Plaintiff's current motion, because the parties were warned that the Court would not consider "arguments which should have been previously raised, but are being raised for the first time" in a motion to reconsider.  Order Establishing Procedures, ECF No. 4 at 6; *see also Aygen v. D.C.*, 311 F.R.D. 1, 3 (D.D.C. 2015) ("Courts should deny motions for reconsideration when it appears that 'the losing party is using the motion as an instrumentality for arguing the same theory or asserting new arguments that could have been raised prior to final judgment.'") (quoting *Lightfoot v. Dist. of Columbia*, 355 F. Supp. 2d 414, 420 (D.D.C. 2005)).

[8] Plaintiff also briefly claims that WWP's Summary Judgment Declaration was

Plaintiff argues that it was prejudiced because "[t]he importer declarations were the only evidence provided by HHS to meet [its] burden" to prove that the requested records were properly withheld under Exemption 4.  Pl.'s Opp'n and Cross-Mot. at 19-20.  But, even if true, Plaintiff does not show that the declarations prevented it from presenting its own case, which is the relevant question.  Clearly Plaintiff was not prejudiced by the Rule 60(b) Declarations of representatives from CSP, SNBL or DZM, because these were prepared and filed *after* the Court's order on the parties' cross-motions for summary judgment, a point Plaintiff concedes.  Pl.'s Opp'n and Cross-Mot. at 19.[9]  Moreover, with regard to the Summary Judgment Declarations of PPI and WWP, which *were* filed at the summary judgment stage, nothing about importers testifying that their industry is competitive prevented Plaintiff from presenting its case otherwise. Neither the importers nor Defendant prevented Plaintiff from obtaining the evidence it now relies on, hid some discrete fact from Plaintiff, or in any other way hindered Plaintiff from arguing that the industry was not competitive or that the information at issue was not confidential.[10]

---

fraudulent because it claimed that WWP requested that Defendant not disclose the animal quantity information in its records to Plaintiff.  As the Court has found, WWP did not in fact request such information be redacted.  However, Plaintiff cannot base its Rule 60(b)(3) motion on this inconsistency because it did not prevent Plaintiff from presenting its case fully and fairly.  In fact, Plaintiff demonstrated its ability to have disputed WWP's declaration on this point at the summary judgment stage by doing just that with respect to PPI's declaration.

[9] DZM's Rule 60(b) Declaration in particular is irrelevant for the additional reason that, as Plaintiff acknowledges, it has been stricken from the record.

[10] Plaintiff belatedly suggests in its Reply brief that Defendant's declarations somehow concealed from it evidence that the requested information had been made publicly available on a shipment-by-shipment basis.  Pl.'s Reply at 14.  Plaintiff states that the importer declarations submitted in connection with Defendant's Rule 60(b)

In sum, the Court DENIES Plaintiff's motion under Rule 60(b)(3) because Plaintiff has not demonstrated the type of fraud, misrepresentation, or misconduct that would warrant relief under that rule, nor has it shown that the importer declarations caused it actual prejudice.

## IV.  CONCLUSION

For the reasons discussed herein, the Court GRANTS Defendant's Rule 60(b) motion and GRANTS-IN-PART and DENIES-IN-PART Plaintiff's Rule 60(b) motion. An appropriate order accompanies this Memorandum Opinion.

_____/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge

---

motion now have "provide[d] the Court with the very proof that it found PETA had not provided at summary judgment" and that Plaintiff "was not able to present its case fully and fairly at the summary judgment stage because [ ] Mr. Block and Dr. Rowell had concealed this dispositive evidence that they now reveal." *Id.*  This argument is clearly meritless.  The new importer declarations simply do not, by any stretch of the imagination, provide proof that the information Plaintiff seeks was made public on a shipment-by-shipment basis.  As discussed in this Memorandum Opinion, these declarations concede that there are instances where competitors in the NHP industry work together in a joint venture of some sort, but, as confirmed by the declarants, this does not mean that they generally share their business information with competitors, let alone make such information publicly available.